## LEO MICHAUD'S CASE.

Kennebec.    Opinion February 27, 1923.

*A petition under the Workmen's Compensation Law should conform to the statute,*
*and particularly state the fact of disagreement between the parties, and "the*
*matter in dispute and the claims of the petitioner in reference thereto."*
*·Especially is this essential in such proceedings inasmuch as frequently*
*claimant is without counsel, and his interests might thus be jeopar-*
*dized.    The issue of the degree of impairment of usefulness*
*is one for the determination of the Commission in its*
*sound judgment, based upon some competent*
*evidence, drawing reasonable inferences from*
*proven facts.*

The petition in this case lacks allegations of material facts essential to a proper presentation of claimant's case.    A petition under the last clause of section sixteen of the Workmen's Compensation Act of 1919 should conform to the requirements of section thirty and particularly should state the fact of disagreement between the parties, and "the matter in dispute and the claims of petitioner in reference thereto."

When, as in the instant case, an answer is not filed, the Commission in proceeding upon the petition may treat the allegations of fact, which are well pleaded in the petition, as admitted, and may make such award as the facts so admitted will support.

The award of the Commission upon the question of the degree of impairment must stand if based upon some competent evidence, drawing reasonable inference from proven facts.    The rule in this particular must be the same in relation to determination of extent of incapacity by the Commission, as in cases of findings of fact by the Chairman.

The extent of impairment rests for ·determination in the sound judgment of the Commission upon consideration of the evidence, and in the instant case the evidence warrants the award.

On appeal.    Claimant received a compensable injury while in the employ of the Cushnoc Paper Company.    He was awarded and paid compensation for the period of disability, and was admittedly entitled to compensation for permanent impairment to the usefulness or physical functions of his right foot.

The parties could not agree as to the extent of the impairment, and claimant filed a petition for its determination. A hearing was had on the petition and the Commission decreed a forty per cent. permanent impairment, and awarded claimant fifteen dollars per week for fifty weeks, and respondents appealed. Appeal dismissed. Decree of sitting Justice affirmed with costs.

The case is stated in the opinion.

Claimant was without counsel.

*Andrews, Nelson & Gardiner*, for respondents.

SITTING: CORNISH, C. J., SPEAR, DUNN, MORRILL, DEASY, JJ.

MORRILL, J. This is an appeal by an employer and insurance carrier from a decree upon a petition filed under the Workmen's Compensation Law of 1919, Chapter 238, Section 16, asking for compensation for permanent impairment of the usefulness of the right foot.

The record shows an entire disregard of the simple procedure marked out by statute, which has become so common, that it merits our attention.

In the first place the petition lacks allegations of material facts essential to a proper presentation of claimant's case. A petition under the last clause of Section 16 should conform to the requirements of Section 30, and particularly should state the fact of disagreement between the parties, and "the matter in dispute and the claims of the petitioner in reference thereto." Attention was called to the insufficiency of the forms of petition, which appear to be generally in use, in *Maxwell's Case,* 119 Maine, 504. The claimants in these cases are quite frequently, as in the instant case, without counsel, and if forms of petitions are provided under Section 37, they should conform to the requirements of the act, lest they become a pitfall for the inexperienced.

Searching the record to ascertain the matter in dispute, we next look for the answer, which should "state the claims of the opponents with reference to the matter in dispute as disclosed by the petition." If the petition was defective, the respondents by answer, or by motion if the defect was apparent upon the face of the papers, should have called attention seasonably to the defect, that it might have been remedied by amendment. The proper procedure was pointed out

in *Maxwell's Case*, supra, but the respondents did not file an answer. "If any party opposing such petition does not file an answer within the time limited, the hearing shall proceed upon the petition." (Section 30). We think that the filing of an answer should be insisted on. The instant case illustrates the possible consequences of a failure to do so. The petition alleges a permanent impairment to the usefulness of the right foot to the extent of seventy-five per cent. With no answer filed, the petitioner could not know whether the permanency of the impairment or the extent of the impairment was in dispute. The Commission found forty per cent. permanent impairment; not having indicated by answer "the matter in dispute as disclosed by the petition," the respondents are in no position to complain of an award of little more than one half of the claim. The Commission in proceeding upon the petition may treat the allegations of fact which are well pleaded in the petition as admitted, and may make such award as the facts so admitted will support, after the analogy of procedure upon bills in equity taken pro confesso for want of appearance or answer.

The record shows, however, that the case proceeded to a hearing before the Chairman and the Commissioner of Labor, upon the single question of the degree of impairment of the injured foot, with result above stated.

The award must stand if based upon some competent evidence, drawing reasonable inferences from proven facts. *Jacques's Case,* 121 Maine, 353. The rule in this particular must be the same in relation to determination of extent of incapacity by the Commission, as in cases of findings of fact by the Chairman.

The claimant suffered the loss of the fourth and fifth toes of the right foot which were amputated including the metatarsal bones of each, thus narrowing the foot about one inch and impairing the functions of the second and third toes. At the first hearing he was the only witness and testified in answer to questions from the Chairman as follows:

"Q. How much less useful do you think it is now than it was before you were injured . . . how much do you think it is impaired?

"A. I think sixty to seventy per cent.

"Q. That is one third as good.

"A. Yes, about one third as good, that is what it is."

If this was all of the claimant's case, the mere guess of an uneducated man, the probative force would be very limited. But the claimant fully explained the effect which the operation had upon the use of the foot in walking and while at work. . This was evidence of the highest quality from which the Commission could determine the extent of impairment.

The opponents rely upon the statements of three physicians. At the suggestion of the Chairman, Dr. Herbert W. Hall and Dr. Richard H. Stubbs were appointed to make impartial examinations, Dr. Hall as an expert to take X-ray pictures. Their reports, not under oath, are in the record. Dr. Hall concludes his report with this remark: "It would seem that about 30 per cent. of disability is occasioned by the loss of bones in the outer part of the foot." This is far from a positive expression of opinion by an expert witness, "an educated guess," and it leaves out of consideration the condition of the other toes.

Dr. Stubbs says: "I believe it is fair to call the big toe one third of the anterior support of the foot. The second and third toes to be one third of the support of the same. And the fourth and fifth to be one third of the same. In this manner I should say that, for a laboring man, there was 33% impairment of this foot." This estimate leaves out of consideration "much impairment of flexion and extension of the third toe," and "the weakening of the whole arch of the foot," as found by Dr. Stubbs. He further says, "The foot is, surely, much less stable than before the injury, and surely cannot stand nearly so much prolonged labor."

At an adjourned hearing Dr. W. H. Harris was called by the respondents; he fixed the degree of impairment at twenty-five per cent. which he arrived at in the following way: He valued the posterior part of the foot at twenty-five per cent., and dividing the anterior part as divided by Dr. Stubbs, he values each division at twenty-five per cent. At the close of a long explanation he says: "There is no schedule of values by which you can estimate the degree of disability in such cases."

The respondents contend that there is no proper evidence in support of the findings of the Commission of forty per cent. permanent impairment to claimant's foot, and that therefore the appeal must be sustained and the award of compensation reversed.

The extent of impairment rests for determination in the sound judgment of the Commission upon consideration of the evidence, and we think that the testimony of the plaintiff, viewed in the light of the findings of Dr. Stubbs, warrants the award. We are convinced that the award is a just determination of what is a difficult problem in every similar case.

*Appeal dismissed.*
*Decree of sitting Justice*
*affirmed with costs.*