## LEE E. J. ROSS' CASE.

### Franklin.    Opinion October 27, 1924.

*Under the Workmen's Compensation Act the requirement of the statute that to a petition an answer should be filed may be waived.    Testimony as to declarations made by the injured several days after the injury, as proving causative connection between the employment and death of the injured, is inadmissible as hearsay.    Such testimony may be admissible if the declarations were spontaneously made and were a natural concomitant of the injury.    A finding by the Commission that there was a causative connection between the injury and the death of the injured, in absence of fraud, if supported by some competent evidence, is final and not examinable.*

In this case while it is true certain hearsay was improperly allowed into the record, in the effort to establish causative connection between the employment of Mr. Ross and his death, it is equally true that it did not come essentially into the Commissioner's finding and the affirming decree.    The report of the accident, as submitted in writing by Mr. Ross' employer to the Industrial Commission, under the duty imposed by statute, rightly had place in the evidence. That report, being believed, notwithstanding it was contradicted by him who made it, by saying that it was wholly based upon narration by Mr. Ross and on rumor, itself justified the finding of the Chairman.

On appeal.    One Lee E. J. Ross was in the employ of the Thomas J. Sheehy Company, an assenter under the Workmen's Compensation Act, as finisher in its woolen mill at Phillips.    He died from tetanus on February 20, 1923.    His employer reported to the Industrial Accident Commission that the death resulted from an accidental injury which arose while and because the man was employed.    When the case was up for compensation, physicians were permitted to testify, on the point of causative connection between employment and injury, what Mr. Ross recited the cause of his injury to be. This was error.    But, in the situation of the record, it did not constitute reversible error, because the report made by the employer, being believed by the trier of fact, notwithstanding it was contradicted subsequently in the evidence, itself justified the finding and award of the Commissioner.    Appeal dismissed with costs. Decree below affirmed.

The opinion states the case.

*J. Blaine Morrison,* for claimant.

*Andrews, Nelson & Gardiner,* for respondents.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

DUNN, J. Petition under the Workmen's Compensation Act. There was failure to comply with the statute requiring that an answer be filed. R. S., Chap. 50, Sec. 32, as amended. This left the petition, analogously to the procedure in equity, to be taken as confessed on the well pleaded facts. *Mitchell's Case*, 121 Maine, 455; *Morin's Case*, 122 Maine, 338; *McCollar's Case*, 122 Maine, 136. But it was not. On the contrary, apparently in the erroneous supposition that an answer was in the file, the case proceeded to full hearing. In the opinion subsequently entered, the Chairman of the Industrial Accident Commission noticed the absence of an answer, but his decision was rested otherwise. As the petitioner ever was and still is indifferent to the lack of answer, and the trial was had as though every material fact had been formally denied, and the case was determined on its intrinsic worth, it is regarded that the direction for answering was waived.

If in the record there be nothing, except that which against objection certain physicians attested, to establish causative connection between the employment of one Lee E. J. Ross and his death, the validity of the claim made by the dependent widow of Mr. Ross against the former employer of her husband, would not be evident. Because the premise of the attesting of each doctor was, that, in the declaration to one or more of the medical men, which the injured man made, several days after the accident, he ascribed the origin of his disability to his daily work. Had Mr. Ross lived, the assertion would have been inadmissible under the hearsay rule. It did not become competent by reason of the death of the maker since it was made. *Queen* v. *Hepburn*, 7 Cranch 290, 3 Law Ed., 348.

A usual expression by an injured person, calculated to indicate existing physical hurt, may be indirectly used as original testimony, in exception to the general rule of evidence, on the ground that it is the spontaneous and natural concomitant of the injury, and virtually the only mode in which the then condition can be shown. *Kennard* v. *Burton*, 25 Maine, 39; *Travelers' Insurance Company* v. *Mosley*, 8 Wall., 397, 19 Law Ed., 437; *Mutual Life Insurance Co.* v. *Hillmon*, 145 U. S., 285, 36 Law Ed., 706; *Northern Pacific R. Co.* v. *Urlin*, 158 U. S., 271, 39 Law Ed., 977; *Elmer* v. *Fessenden*, 151 Mass., 359;

*State* v. *Howard*, 32 Vt., 380; *Bagley* v. *Mason*, 69 Vt., 175; *Shearer* v. *Buckley*, (Wash.), 72 Pac., 76; *Cleveland, etc. Co.* v. *Newell*, (Ind.), 3. N. E., 836. But recital of the cause that produced the injury is of a past event whereof self-interest may have warped both memory and judgment, it is uncontemporaneous with a present situation, and therefrom does not derive a claim to confidence and credit. It is mere narration or rehearsal and for the most but marks the point where the shade blends with the light and makes the shadow in the delineation of the rule of the law of evidence. *Mary Ann Kelley's Case*, 123 Maine, 261; *Insurance Co.* v. *Mosley*, supra; *Boston, etc. Co.* v. *O'Reilly*, 158 U. S., 334, 39 Law Ed., 1006; *Bacon* v. *Charlton*, 7 Cush., 581; *Chapin* v. *Marlborough*, 9 Gray, 244; *Roosa* v. *Boston Loan Co.*, 132 Mass., 439; *Jones* v. *Village of Portland*, (Mich.), 50 N. W., 731, 16 L. R. A., 437; *Collins* v. *Waters*, 54 Ill., 485.

Dismissing, therefore, the testimony founded on that which Mr. Ross said about the occurrence of his injury, what is there to show the causative connection? This question alone is open. For several years before the 14th day of February in 1923 when he quit work, Mr. Ross was one of the finishers in the woolen mill of the Thomas J. Sheehy Company at Phillips. The finishers sorted wool, they worked on cloth held in place by wires, and used needles in sewing the cloth. The manager of the company, while in the mill about one week before Ross died, saw "a place on his finger . . . as though it was scratched and had been painted with iodine." Physicians later found a wound, slight in the degree of puncture, on the third digit of the man's left hand. Mr. Ross died from tetanus or lockjaw, on the sixth day after he quitted work, with no other cause internally in his body or externally from his environment. The petitioner contended, in the hearing before the Commissioner, that the tetanus came from the wound, or, in other words, that the wound was the real cause of death, the circumstance of the infective bacterial disease an accessory cause, and that the wound arose out of and in the course of the employment of Mr. Ross.

Every compensation-act employer, whose employee is accidently injured in and by reason of his employment, is under the duty of reporting to the Industrial Accident Commission. R. S., Chap. 50, Sec. 41, as amended. The treasurer of the Sheehy Company, who also was its manager, reported in the pending instance, saying in this way:

"Injured received slight cut on 3rd finger, left hand, while working in finishing room, painted it with iodine several times but infection set in causing Lockjaw resulting in death Feb'y. 20, 1923."

That report, being adverse to the interest of the employer, rightly had place in the evidence. *Jacque's Case*, 121 Maine, 353. The employer's insurance carrier undertook to prove, or to raise an inference if it could be, that the actual fact was at variance with the report. The carrier called the treasurer who testified that the report was wholly based on what, on seeing the scratch and speaking to Ross about it, the latter told him, and the rumor that soon was prevalent concerning Ross' death.

The credibleness and significance of the evidence were for the trier of fact. *Mailman's Case*, 118 Maine, 173. The explanatory testimony, had it been accepted, would have discredited the report. The report, being believed, notwithstanding its contradiction, justified the finding, regardless of any circumstantial proof. In cases of this kind, where no fraud appears, the volume of the evidence, or how it might be esteemed elsewhere, is not examinable. The test is simply whether some competent evidence supports the finding. R. S., Chap. 50, Sec. 34, as amended. *Mailman's Case*, supra.

That hearsay was improperly allowed into the record is not overlooked, but it did not come essentially into the finding and the decree, so reversible error was not done. *Mailman's Case*, supra; *Larrabee's Case*, 120 Maine, 242; *Ballou's Case*, 121 Maine, 282; *Lachance's Case*, 121 Maine, 506.

> *Appeal dismissed with costs.*
> *Decree below affirmed.*