**Edward W. CLARK**

v.

**KAGAN LOWN & COMPANY and/or American Motorists Insurance Company.**

Supreme Judicial Court of Maine.

June 14, 1979.

Kobritz & Hamilton by Harold C. Hamilton (orally), Bangor, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Ronald D. Russell (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Kagan Lown & Company and its insurance carrier have appealed from a pro forma decree of the Superior Court approving a compensation award to Edward W. Clark by the Workers' Compensation Commission.

We sustain the appeal.

Mr. Clark was employed by Kagan Lown & Company and testified that "back in July" of 1976, while lifting some supplies, "I felt something let go in my back." "Probably a week or so afterwards" back pain began to be manifest, but it was not until at least September 28, 1976, that the petitioner was told by an orthopedic specialist that surgery was required. Petitioner testi-

fied that in the interim period he was told by another doctor that he had "bursitis of the hip." He continued at his employment until September 28, or 29, 1976, despite his increasing physical discomfort. On October 19, 1976, Mr. Clark "underwent surgical removal of L–4–5 disc on both the right and left sides."

The petitioner testified that after the orthopedic examination he called his supervisor, Sarah E. Ware, "the next morning" and told her of the diagnosis. Mrs. Ware acknowledged that she received this information, although she recalls it as coming from Mr. Clark's wife.

The petition for compensation was filed March 28, 1977. Despite the mandate of 39 M.R.S.A. § 97, which then required that answers be filed "within 15 days after notice of the filing of [the] petition,"[1] the respondents' answer was not filed until May 4, 1977.

The Commission held four hearings on this petition, namely, on October 11, 1977; March 24, 1978; May 22, 1978; and July 21, 1978. On October 4, 1978, a decree issued awarding compensation to the petitioner, which generated this appeal.

The decree contained this language:

The Commission finds no Answer was filed within 20 [sic] days after the notice of the filing of such petition as required by Section 97 of the Act. No motion was filed with this Commission requesting permission for the late filing of the answer nor was any permission granted by this Commission for late filing of the answer notwithstanding that an answer was filed with this Commission on May 4, 1977.

When no Answer is filed, facts set forth in petition taken as admitted, and finding and award can be made, as the facts will support. [citations omitted]

The Commission finds that Edward Clark received a compensable injury to his back while lifting on or about the last of July, 1976. He continued to work until September 28, 1976 at which time he came under the care of Dr. Philip Kim-

---

1. P.L.1977, ch. 437, § 5, amended § 97 and substituted "20" for "15."

ball, an orthopedic surgeon. An operation was performed with removal of a disc at L 4–5.

39 M.R.S.A. § 97 provides in part:

The commission . . . may grant further time for filing answer, . . . .

Except that for good cause shown, a single commissioner may permit the late filing of any pleading permissible under this Act.

The four hearings on this petition proceeded exactly as if the answer had been seasonably filed.[2] This answer denied all allegations of the petition except that of employment and specifically alleged that Mr. Clark had not given his employer seasonable notice of his injury. The petitioner registered no objection to the many questions asked by defense counsel on his cross-examination which were directed at the notice issue. Additionally, counsel for petitioner did not object to the testimony of Mrs. Ware, made no effort to strike the same from the record, and voluntarily appeared and participated in that final hearing. The Commission asked for, and received, a stipulation of earnings, on which it predicated its award.

The Commission included *Ross' Case*, 124 Me. 107, 126 A. 484 (1924), as authority for treating the case as if no answer had been filed. On its facts, however, *Ross' Case* is authority supportive of the respondents' position. The following language is applicable to the facts in the record now before us, namely:

As the petitioner ever was . . . indifferent to the lack of answer, and the trial was had as though every material fact had been formally denied, and the case was [tried] on its intrinsic worth, it is regarded that the direction for answering was waived.

124 Me. at 108, 126 A. at 484.

On the facts in this record it was error for the Commission to take the petition,

analogous to equity procedure, as confessed on the facts well pleaded, an admittedly appropriate procedure in the absence of an answer.

On the record before us we are unable to determine factually whether the petitioner did give his employer proper notice of his injury. For example, did Mr. Clark have such knowledge of his injury in July that he should then have given formal notice thereof? *Farrow v. Carr Bros. Co.*, Me., 393 A.2d 1341 (1978). Or, did the employer have such actual knowledge of the injury within thirty days of the July episode that formal notice was not required? 3 Larson, Workmen's Compensation Law, § 78.70. *See Smith v. Boiler Co.*, 119 Me. 552, 560, 112 A. 516, 519 (1921). Finally, was the notice given to Mrs. Ware on September 29, 1976, in compliance with the Act because it was not until then that the compensable injury became apparent? *Ross v. Oxford Paper Company*, Me., 363 A.2d 712, 716 (1976).

The answers to these questions require factual evaluation. The record is not so clear that we can determine this issue as a matter of law.

The entry is:

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Remanded to the Superior Court with direction to remand to the Workers' Compensation Commission for further proceedings consistent with this opinion.

It is further ordered that the Employer pay to the Employee an allowance for counsel fees in the amount of $550, together with his reasonable out of pocket expenses for this appeal.

---

2. For example, the only witness at the final hearing was Sarah E. Ware, plaintiff's supervisor, who testified only that she had no knowledge of petitioner's condition until "sometime in September" of 1976. In addition to the testimony about calling Mrs. Ware on September 29, 1976, Mr. Clark had testified that Mrs. Ware first became aware of his condition about "three or four weeks" after the lifting episode because "I would keep walking into the supply room and sitting down and rubbing my back."