EUPHEMIA MENZIES *v.* EVERETT FISHER ET AL.
(two cases)

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued June 6—decided July 18, 1973

*John J. Cotter,* for the appellants (defendants) in the first case, and for the appellees (defendants) in the second case.

*James J. Quinn,* for the appellee (plaintiff) in the first case, and *James R. Fogarty, Jr.,* for the appellant (plaintiff) in the second case.

SHAPIRO, J. These consolidated cases are appeals from judgments of the Superior Court, which dismissed appeals from a finding and award of the workmen's compensation commissioner. The appeal of the plaintiff-widow, Euphemia Menzies, challenges the denial of an award of attorney's fees and the denial of a motion which sought to preclude the defendants from asserting a defense. In the appeal of the defendants Everett Fisher and The Atlantic Companies, the fundamental issue is whether the injury which led to the death of John D. Menzies was one which arose out of and in the course of his employment.

The material facts are not in dispute: The plaintiff's husband, John D. Menzies, was employed by Fisher as a chauffeur and handyman. Menzies lived in his own house, located in the northeastern area of

Greenwich but drove an automobile supplied by his employer to and from work at the Fisher residence, located in the northwestern area of Greenwich. This arrangement was convenient because Menzies sometimes was required to use the automobile at night to perform services for his employer.

In the late afternoon of October 1, 1970, Menzies, having completed his normal workday, started to drive home from his employer's residence in an automobile furnished for his use by his employer. He followed his usual route home until he stopped at the home of the Horst Von Hennings, personal acquaintances of his, with the purpose of picking up their mail. The Von Hennings' home is situated on Stanwich Road in Greenwich, on a route Menzies normally took home from his place of employment, and their mailbox is located at the roadside. Menzies parked the automobile on a slight incline on Stanwich Road at the edge of the Von Hennings' driveway and got out of the automobile. Before he reached the mailbox, the automobile rolled backward down the incline and over him. The automobile was later found against a stone wall situated about fifty feet south of the mailbox with its engine running, in reverse gear and with its parking brake on. Menzies was discovered by a passerby. He died three days later.

On these facts the commissioner awarded workmen's compensation to the plaintiff, the widow of the deceased. The defendants claim that the facts do not support the conclusion that the injury was one "arising out of and in the course of his employment" within the meaning of § 31-275 of the General Statutes as interpreted by this court. On the view we

take of the case, the procedural issue raised by the plaintiff is dispositive of the defendants' appeal and it makes it unnecessary for us to consider the defendants' assignments of error.

# I

We first consider the plaintiff's claim that the commissioner erred in refusing to grant her "Motion to Preclude" the defendant from contesting compensability, pursuant to § 31-297 (b) of the General Statutes. That section provides: "Whenever liability to pay compensation is contested by the employer, he shall file with the compensation commissioner, on or before the twentieth day after he has received a written notice of claim, a notice in accord with a form prescribed by the commissioners stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the *specific* grounds on which the right to compensation is contested, and a copy thereof shall be sent to the employee. *If the employer or his legal representative fails to file the notice contesting liability within the time prescribed herein, the employer shall be conclusively presumed to have accepted the compensability of such alleged injury or death and shall have no right thereafter to contest the employee's right to receive compensation on any grounds or the extent of his disability.*" (Emphasis added.) The italicized language of the statute was incorporated by Public Acts 1967, No. 842, § 7. The plaintiff claims that the defendant employer's notice, which merely stated "[w]e deny a compensable accident or injury," was fatally deficient in failing to specify the grounds on which compensation was denied. Under the force of the 1967 amendment to

§ 31-297 (b), therefore, she argues that the notice was inoperative and should result in the conclusive presumption that the employer has accepted the compensability of the death of John Menzies. In this connection she attacks the court's conclusion that the commissioner correctly denied the motion to preclude.

To determine the scope and operation of the 1967 amendments to § 31-297 (b), it is appropriate for us to consider the circumstances surrounding their adoption. See *Hartford Electric Light Co.* v. *Wethersfield,* 165 Conn. 211, 222, 332 A.2d 83, and cases cited. The statutory changes which are of concern to us here were in one small section of a rather substantial piece of legislation, Public Acts 1967, No. 842. By this act the legislature sought to correct some of the glaring inequities and inadequacies of the Workmen's Compensation Act. Among the defects in previous provisions of the act were the needless, prejudicial delays in the proceedings before the commissioners, delays by employers or insurers in the payment of benefits, lack of knowledge on the part of employees that they were entitled to benefits and the general inequality of resources available to claimants with bona fide claims. See 12 H.R. Proc., Pt. 9, 1967 Sess., pp. 4035-37. When the amendment was proposed for passage, the member of the committee presenting the bill (1967 Sess., H.B. 2161) stated: "The present law requires employers to give notice of intention to contest within 20 days after notice of injury. The commissioners are not in agreement as to what the results are when the employer fails to give the required notice, or where the notice involved does not comply with the law. Some hold, in effect, that there is no penalty, while

others hold there is no right to contest liability, but the extent of injury may still be contested. This section clears up the situation. It provides that within 20 days after written notice of claim is made, the employer must file a statement of intention to contest and the basis upon which he will contest. If he fails to file this notice within the time stated or the notice is defective, the employer cannot thereafter contest either liability or extent of liability. This will mean that employers will now have to investigate claims promptly and act quickly; it also means that employees will be able to learn early in the proceedings what the defects are, if any, in their claims." 12 H.R. Proc., Pt. 9, 1967 Sess., p. 4036. We take judicial notice of this transcript of the legislative proceedings. *Bird* v. *Plunkett,* 139 Conn. 491, 504, 95 A.2d 71; see *Institute of Living* v. *Hartford,* 133 Conn. 258, 265, 50 A.2d 822. The committee member's statement was a committee report, and, although not controlling, it may properly be considered as an aid to the determination of the legislative intent. See *Hartford Electric Light Co.* v. *Wethersfield,* supra, p. 6; *Bird* v. *Plunkett,* supra; see also 50 Am. Jur. 319–20, Statutes, § 327; 2 Sutherland, Statutory Construction (3d Ed.), p. 502.

The object which the legislature sought to accomplish is plain. Section 31-297 (b) was amended to ensure (1) that employers would bear the burden of investigating a claim promptly and (2) that employees would be timely apprised of the specific reasons for the denial of their claim. These effects would, in turn, diminish delays in the proceedings, discourage arbitrary refusal of bona fide claims and narrow the legal issues which were to be contested. To narrow the scope of the controversy would

lighten the burden on the claimant in terms of legal expenses, a result which the legislature plainly desired to accomplish by its 1967 amendments. See 12 H.R. Proc., Pt. 9, 1967 Sess., pp. 4037–38; cf. General Statutes § 31-298, as amended by Public Acts 1967, No. 242. A general denial that a claimant has a compensable injury reveals no specific defense or reason why the claim is contested. Such a conclusionary statement would leave open numerous possible defenses, such as a defense of lack of employer-employee status, a defense that the death was due to suicide or to homicide or a claim that death was caused by an intervening injury. As far as notifying the claimant of the specific grounds on which her claim was contested, the stated disclaimer apprised her of nothing except the fact that liability was contested. From this claimant's vantage point, if the defendants proceed on the stated defense, "[w]e deny a compensable accident or injury," she, the claimant, must be prepared to meet any number of undisclosed objections to recovery—including her eligibility to receive compensation benefits. Neither the statute nor the Workmen's Compensation Act contemplates such an impediment to bona fide claims.

It may be argued that, seen from a strict, technical point of view, the defendants' denial of a "compensable accident or injury" restricts the controversy to the legal questions whether the alleged injury arose out of and in the course of employment and whether it resulted in the death of John Menzies; see *De la Pena* v. *Jackson Stone Co.*, 103 Conn. 93, 99–100, 130 A. 89; but to place a technical construction on a procedure designed to be simple runs counter to the spirit of the Workmen's Compensation Act, as well as to its literal provision that "no

formal pleadings shall be required." General Stat-
utes § 31-298. In any event, the sufficiency of the
notice under the statute must be judged not by the
technical meaning which a court might attach to it,
nor by a meaning the defendant subsequently dis-
closes at the hearing, but rather by the criterion of
whether it reveals to the claimant specific substan-
tive grounds for the contest. The point of this
criterion is to inform the claimant of the deficiencies
of his claim after the defending party has had an
opportunity to make a thorough investigation. Does
the claimant need to bring in witnesses to the acci-
dent or expert medical witnesses or instruments
documenting death? Does the claimant need the
presence of an attorney at the hearing or can the
contested issue be resolved by the submission of a
document, such as, for example, a marriage certifi-
cate or a court order appointing the claimant execu-
trix of the decedent's estate? And if the controversy
is such as to require an attorney for the claimant, to
what precise legal issue must counsel address him-
self?

The amendment to § 31-297 which was adopted in
1967 embodies the recognition that it is within the
employer's power to supply the answers to such
questions in a simple, forthright manner prior to a
hearing. As a procedural rule, this part of the stat-
ute operates nevertheless substantively in requiring
initial affirmative acts from an employer beyond
those normally incident to a court proceeding. It is
up to the employer to investigate the claim forthwith
and either to concede its compensability or to reveal
concrete reasons for contesting that claim. This rule
is equitable because employers and insurers have the
necessary resources to fulfill its mandate, whereas

the claimant often receives no more assistance than that furnished by the commissioner in filing his claim. Furthermore, the statute now helps fulfill the major legislative design of the 1967 amendments in that it removes obstacles which tend to discourage valid claims.[1] See 12 H.R. Proc., Pt. 9, 1967 Sess., pp. 4036–38. From the context of the legislative proceedings incident to the 1967 amendments a deficient notice of disclaimer, such as is present in the case at bar, should be presumed to operate prejudicially against the claimant. It is, therefore, of no help to say that the claimant, faced with a general denial of compensability, should ask the employer for a more specific statement or that she must demonstrate some surprise or prejudice to herself. Arguments of this nature overlook the fact that the proceedings were designed to facilitate a speedy, efficient and inexpensive disposition and to reduce the necessity of legal counsel for the claimant. Furthermore, they presuppose that the legislature's thrusting the word "specific" into the statute in 1967 was a mere inconsequential act.

Admittedly, the statute does not unequivocally dictate that a deficient notice of disclaimer be treated as no notice whatsoever. The considerations which we have treated above, however, lead us to view the statutory effect of notice with an eye toward accomplishing the goal of the 1967 amendments. From the claimant's vantage point, an employer whose

---

[1] Among the former prohibitive hurdles to meritorious claims were the worker's loss of wages for the day lost at a formal hearing (now cured by § 31-298, as amended by Public Acts 1967, No. 842, § 8) and substantial legal fees incurred in presenting and prosecuting his claim (now see § 31-298 as amended by Public Acts 1967, No. 242, and § 31-300, as amended by Public Acts 1967, No. 842, § 10).

grounds of contest are no more specific than "[w]e deny a compensable accident or injury," leaves the claimant as much in the dark with regard to the nature of the contest as does a categorical denial or mere silence from the employer. To attach the consequence that the employer be conclusively presumed to have accepted compensability of the death under § 31-297 seems to us the construction which the language and design of the statute support. For it is clear that to attach no consequence to a general denial would leave the claimant in the same disadvantaged position from which the legislature sought to extricate him. The claimant thus would still be obliged to prod the employer into revealing specific grounds for the contest; he would confront the same delays which benefit only the employers and which discourage valid claims. The severity of the statutory consequence is mitigated, however, when we compare it to that of an employer's notice filed one day late. The statute unequivocally requires that an untimely notice bar the employer from asserting a defense. But although no harm in fact may come to the claimant with one day's delay, the specific harms deplored in the 1967 legislative proceedings, discussed above, would continue unabated if claimants must take the initiative in extracting from the employer his reasons for the contest.

We hold, therefore, that the giving of notice by the employer as to the specific grounds on which the right to compensation is contested is a condition precedent to the defense of the action. The duty to comply with the statute rests on the employer. See *Newell* v. *North Anson Reel Co.*, 161 Me. 461, 214 A.2d 97. The notice by the employer need not be expressed with the technical precision of a plead-

ing, but it must, as required by the statute, reveal to the claimant "the specific grounds on which the right to compensation is contested." It is not unjust to require a defending employer or insurance carrier to investigate the case seasonably and to cause a responsive answer to be filed. *Newell* v. *North Anson Reel Co.*, supra, 465. If an employer has, however, grounds for denying liability for compensation, there is no sound reason why he should not be required to advise the claimant as to the substantive grounds on which liability is denied. The rule contemplates and requires only the simplest procedure and compliance with it enables the principal issues to be framed before a hearing is commenced. See *Chapman* v. *Foremost Dairies, Inc.*, 249 S.C. 438, 452, 154 S.E.2d 845. The purpose of the requirement of stating the "specific grounds" is to furnish the claimant such warning as would prompt him to make the inquiries he might deem necessary or prudent for the preservation of his interests and in obtaining such information as he might deem helpful for his protection.

Judged by this standard, the notice submitted by the employer, "[w]e deny a compensable accident or injury," falls short of the statutory requirement in failing to supply any specific grounds for denying the plaintiff's claim. We conclude that the court should have sustained the claimant's appeal relating to the motion to preclude. Its failure to do so, however, constitutes harmless error in light of its sustaining the award. Our decision as to the procedural effect of § 31-297 thus renders moot the claim by the defendants that the injuries sustained by the claimant's decedent did not, on the facts, arise out of and in the course of employment.

## II

We turn next to the plaintiff's claim that she was entitled as of right to an award of attorney's fees for her representation at the formal hearing. The court in passing on this claim stated in its memorandum of decision that "the respondent has not unreasonably contested liability, and consequently the allowance of fees was within the discretion of the Commissioner." It is plain that the court sustained the commissioner's decision on the authority of General Statutes § 31-300. That statute was amended by Public Acts 1967, No. 842, § 10, to provide: "In cases where the claimant prevails and the commissioner finds that the employer or insurer has unreasonably contested liability, the commissioner may allow to the claimant a reasonable attorney's fee." The plaintiff has no quarrel with the correctness of the commissioner's decision under § 31-300 of the General Statutes; she makes no assertion that he abused his discretion in denying the award of attorney's fees.

The plaintiff argues, however, that she was entitled to an attorney's fee for representation at the formal hearing as a matter of right by virtue of General Statutes § 31-298. A few weeks prior to the 1967 amendment to § 31-300 (Public Acts 1967, No. 842), the legislature added to General Statutes § 31-298 an amendment providing that if the claimant prevails on final judgment after a formal hearing before the commissioner, he "shall be entitled . . . [to] attorney's fees for representation of the claimant at the formal hearing." Some weeks later the legislature enacted Public Acts 1967, No. 842, § 8 of which expressly repealed § 31-298 and which

substituted therefor a provision which omitted the language of the previous act, Public Acts 1967, No. 242. Although the form of Public Acts 1967, No. 842, § 8, does not follow the directive of General Statutes § 2-18[2] insofar as it fails to set forth the pertinent, repealed language of Public Acts 1967, No. 242, in brackets, it is clear to us that the legislature has effectively repealed the act on which the plaintiff relies in pressing her claim for attorney's fees. The later form of the statute, General Statutes § 31-298, as amended by Public Acts 1967, No. 842, § 8, by its very terms repealed the earlier provisions of that section. Those portions of the previously amended statute which were omitted from the statute in its new form ceased to be the law and were effectively repealed.[3] *Anastasio* v. *Gulf Oil Corporation,* 131 Conn. 708, 714, 42 A.2d 149; *Simborski* v. *Wheeler,* 121 Conn. 195, 200, 183 A. 688; *Aston Motor Car Co.* v. *Mannion,* 92 Conn. 568, 569, 103 A. 655. The commissioner, therefore, was without statutory authority to order counsel fees for the plaintiff's representation as a matter of right; he could properly have awarded them only on the con-

[2] General Statutes § 2-18, entitled "Form of bills amending statutes," provides in part: "Matter to be omitted or repealed shall be surrounded by brackets." We consider this statute to be a directive for the mechanical form of printed bills, and not a mandate for the validity of public acts.

[3] It has been indicated to the court that it has been the long-standing practice of the legislative commissioners' office, in the discharge of its official duties as publisher of the supplements and revisions of the General Statutes (see General Statutes, c. 17), to incorporate in one section amendments to the same statutory section effected by two or more acts of the same session of the General Assembly where the later act or acts do not refer to and incorporate the amendment of the earlier act and where the several amendments are not in irreconcilable conflict. The validity of this practice was neither argued nor raised as an issue in this case and accordingly is not decided by us.

ditions set forth in General Statutes § 31-300. Accordingly, there is no error in the court's sustaining the commissioner's denial of the requested award.

There is no error in either of the appeals.

In this opinion LOISELLE and BOGDANSKI, Js., concurred.

HOUSE, C. J. (dissenting). I do not agree with the majority opinion and would hold that the workmen's compensation commissioner and the Superior Court both correctly decided that the defendant employer was not precluded from contesting liability under the provisions of the Workmen's Compensation Act. The majority opinion holds that the defendants were precluded on procedural grounds from contesting liability; so it was unnecessary for that opinion to discuss on its merits the issue of liability and, accordingly, it properly refrained from doing so. Since I do not concur with the holding that the defendants were for procedural reasons precluded from contesting the merits of the plaintiff's claim, I think that issue is not moot and it is pertinent in this dissenting opinion to comment also on the merits of the issue of liability. This dissenting opinion, accordingly longer than usual, requires a discussion of two separate issues—preclusion to contest liability and the court's decision on the merits of the issue of liability.

I

PRECLUSION

The majority opinion construes § 31-297 (b) of the General Statutes to deny to the defendants not only the right to contest liability and be heard on the merits of whatever defenses may be available to

them but to correct whatever "deficiencies" there might be in the notice that they were contesting liability. Section 31-297 (b) is quoted in full in the majority opinion and it is unnecessary to repeat it in full here but it is important to bear in mind the specific language which makes provision for preclusion. The statute provides that when an employer contests liability to pay a claim for workmen's compensation he shall within twenty days of receipt of notice of the claim file with the commissioner a notice stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested. The statute then provides: "If the employer or his legal representative fails to file the notice contesting liability within the time prescribed herein, the employer shall be conclusively presumed to have accepted the compensability of such alleged injury or death and shall have no right thereafter to contest the employee's right to receive compensation on any grounds or the extent of his disability." It should be noted that the sole stated statutory ground for preclusion of the right to present a defense to a claim is "[i]f the employer or his legal representative fails to file the notice contesting liability within the time prescribed." The statute does *not* state any ground for preclusion other than a failure to file within the time limited the notice contesting liability. It does *not* state that a defendant is precluded from contesting liability if a timely-filed notice contesting liability fails to state the name of the claimant or the name of the employer or the date of the alleged injury or the grounds for contesting liability with sufficient specificity. The majority opinion, nevertheless, reads into the statute words which I do not

find there and which, in effect, add language to the statute to preclude the offering of a defense not only if the employer fails to file a timely notice contesting liability but also if the defendant's stated reasons for contesting liability are not stated with sufficient specificity. It holds that a lack of sufficient specificity in the stated grounds for contesting liability shall have the same result as the failure to file any notice whatsoever—and this despite the necessary concession contained in the opinion's understatement that "[a]dmittedly, the statute does not unequivocally dictate that a deficient notice of disclaimer be treated as no notice whatsoever." It finds support for this holding in "the construction which the language and design of the statute support." I cannot reconcile such a holding with our well-established principles of statutory construction. "In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language. *Miller* v. *Colonial Forestry Co.*, 73 Conn. 500, 505, 48 A. 98; *Antman* v. *Connecticut Light & Power Co.*, 117 Conn. 230, 236, 167 A. 715; 50 Am. Jur. 280 [Statutes, § 299]; see 2 Sutherland, Statutory Construction (3d Ed.) § 4507." *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 667, 103 A.2d 535. "When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by construction. *State* v. *Simmons*, 155 Conn. 502, 504, 234 A.2d 835; *Hurlbut* v. *Lemelin*, 155 Conn. 68, 73, 230 A.2d 36. It is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words; *Lenox Realty Co.* v. *Hackett*, 122 Conn. 143, 150, 187 A. 895 . . . . The statute must be applied as its words direct. *Obuchowski* v. *Dental Commission*, 149 Conn. 257,

265, 178 A.2d 537." *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365, 269 A.2d 265. "It is the expressed intent of the legislature which controls, and that intent is to be found in the meaning of what it says." *Adams* v. *Vaill,* 158 Conn. 478, 483, 262 A.2d 169. "We cannot speculate upon any supposed intention not appropriately expressed in the language of the act itself or restrict the ordinary import of the words therein used." *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 688, 81 A.2d 119. I view with particular concern the holding implicit in the majority opinion that a party may be deprived of a fundamental right, such as that to present a valid defense and contest liability, because he relied on the express language of a statute and was unaware of some contrary legislative design or intent which the language of the statute did not disclose and of which design or intent he could not be aware without a study of the legislative discussion and proceedings leading to the adoption of the statute. To me the imposition of such a burden is intolerable.

The notice filed by the defendants pursuant to the statute stated as the ground for contesting liability: "We deny a compensable accident or injury." In my opinion this notice substantially complied with the statutory directive that the notice of contest should state "the specific grounds on which the right to compensation is contested." Although the notice disclaiming liability would have more fully complied with the statutory direction of specificity if it had been more detailed, the denial of a "compensable" accident or injury substantially narrowed the possibly contested issues to the single one of whether the injury alleged was "compensable" under the provisions of the Workmen's Compensation Act. Acci-

dental bodily injury has been defined as "a localized abnormal condition of the living body directly and contemporaneously caused by accident" and "personal injury" is practically synonymous with "accidental bodily injury." *Galluzzo* v. *State,* 111 Conn. 188, 192, 193, 149 A. 778. The expanded term "compensable personal injury" is a personal injury "which arises out of and in the course of the employment and produces an incapacity to work for the requisite statutory period." *De la Pena* v. *Jackson Stone Co.,* 103 Conn. 93, 99, 130 A. 89. The term "compensable injury" in the context of workmen's compensation assumes the existence of an injury and is concerned only with the question of whether that injury arose out of and in the course of employment. See also *Alford* v. *Kaiser Aluminum & Chemical Corporation,* 229 So.2d 372, 375 (La.); *Seymour* v. *Journal-Star Printing Co.,* 174 Neb. 150, 152–53, 116 N.W.2d 297; *Haufe* v. *American Smelting & Refining Co.,* 163 Neb. 329, 330, 79 N.W.2d 570. By pleading that the alleged injury was not compensable, the defendants specifically limited their contest and defense to that single ground, not contesting the several other allegations contained in the "Form for Notice to Employer in Case of Death" filed by the claimant. The plaintiff's allegations which thereafter remained uncontested included: (1) the claim that Menzies was an employee of the respondent, (2) the place of employment, (3) the precise injuries he sustained, and (4) the claim that he died as a result of these injuries, that the claimant had been dependent on him for support and that she was the executrix of his estate.

The plaintiff argued that because the Workmen's Compensation Act should be interpreted liberally in favor of claimants; see, for example, *Klapproth*

v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886; the word "specific" as used in § 31-297 should be strictly construed to mean "precise" or "detailed" rather than construed as "definite, or making definite." See Webster, New International Dictionary (2d Ed.). Other legal and equitable principles, however, are entitled to at least as much consideration in a proceeding which is to be governed by equitable principles. The opportunity to be heard and to present defenses is an essential element of due process of law; *Proctor* v. *Sachner,* 143 Conn. 9, 17, 118 A.2d 621; and equity's abhorrence of forfeitures and of penalties which are flagrantly oppressive and disproportionate to the delict which has been committed are equally as persuasive as, and not necessarily inconsistent with, the policy favoring employees in workmen's compensation cases. Due process considerations aside, I would be reluctant to infer an intention on the part of the legislature to condition the right of a defendant to present a valid available defense on a strict construction of the degree of particularity with which one portion of a notice is pleaded in an administrative proceeding in which the legislature has expressly provided that "no formal pleadings shall be required, beyond such informal notices as the commission approves" (General Statutes § 31-298) and the opposing party has not even suggested any claim of surprise or prejudice. It seems to me that to default a defendant on the technical ground that his pleading is not sufficiently specific, in the language of the majority opinion "runs counter to the spirit of the Workmen's Compensation Act, as well as to its literal provision 'no formal pleadings shall be required.' General Statutes § 31-298." That section of the statute not only expressly dispenses with the necessity for strict formal

pleadings in workmen's compensation cases but also provides that "the commissioner shall proceed, so far as possible, in accordance with the rules of equity." The commissioner is directed "to carry out justly the spirit" of the act and "is the adviser of all and the umpire between the disputants." *Delgaizo* v. *Veeder-Root, Inc.*, 133 Conn. 664, 668, 54 A.2d 262, quoting *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 149, 93 A. 245. To require strict pleading on the part of the defendants is entirely contrary to the informality which prevails in workmen's compensation cases and "[e]quity abhors, and the law does not favor, a forfeiture." *Pierce* v. *Staub,* 78 Conn. 459, 466, 62 A. 760. In the absence of a clearly expressed statutory provision to the contrary, the sanction of the conclusive presumption that the employer has accepted the compensability of an alleged injury and forfeited the right to contest compensability should apply only where the employer has failed timely to file the notice that he is contesting liability and should not by judicial construction be made applicable in such a case as this where the employer has within the time limited filed the notice of contest and expressly disclaimed liability.

In my opinion the defendants complied with the statutory directive as to the timely filing of their notice contesting liability but even if their stated ground of defense were not sufficiently specific fully to apprise the claimant of their defense I cannot read § 31-297 (b) as precluding them from contesting the plaintiff's claims and as permitting the plaintiff to prevail as on default and without requiring her to prove that she is in fact entitled to the workmen's compensation benefits which she has claimed. I would find no error in the conclusions of

both the commissioner and the trial court that the defendants were not precluded from contesting the plaintiff's claim.

## II

### LIABILITY

On the merits of the issue of liability, I would find error in the judgment sustaining the commissioner's award to the claimant. The basic facts have been recited in the majority opinion with the exception of one not only material but decisive fact which the defendants are entitled to have added to the finding in accordance with their assignment of error. This fact is that when Menzies, on his way home, parked the automobile and left it to go to pick up the mail that had been left in the Von Hennings' mailbox and while on that errand sustained his fatal injury, he was doing an act as a favor to his neighbors and one which had nothing to do with his employment by the defendant Fisher. The plaintiff herself so testified.[1] The defendants are entitled to have the finding corrected to include this fact as one which was not only admitted and undisputed but which was testified to by the plaintiff herself. With the addition of this fact to the finding, it must be concluded that the record does not support the commissioner's conclusion that the injuries sustained by Menzies were injuries "arising out of and in the course of his employ-

---

[1] "Q. This picking up of the mail was being done as a favor for some neighbors? A. Yes, sir.

"Q. This didn't have anything to do with his employment? A. No sir. I do the same for my other neighbors.

"Q. He indicated to you on the road that day that he was in the act of getting some mail when the accident happened? A. Yes sir.

"Q. This was for the benefit of your neighbors who had asked him to do this? A. Yes."

ment"[2] within the meaning of § 31-275 of the General Statutes as interpreted by this court. Rather, it must be concluded that Menzies' stopping and leaving the automobile and going to pick up the Von Hennings' mail was such a deviation from the duties of his employment as to render his injury noncompensable under the provisions of the Workmen's Compensation Act.

The plaintiff has argued that because the mailbox was situated directly on the route usually taken by Menzies from work to home and his employer would permit such a personal errand as he was doing for the Von Hennings, there was no such deviation. The weakness in this argument is that a deviation from employment may occur regardless of any geographic change of position. The claimant has the burden of proving a compensable injury. *Dombach* v. *Olkon Corporation,* 163 Conn. 216, 221, 302 A.2d 270; *Woodley* v. *Rossi,* 152 Conn. 1, 4, 202 A.2d 136. To be compensable, the injury must meet the dual tests of having arisen in the course of the employment and out of the employment. "[A]n injury arises in the course of the employment when it takes place (a) within the period of the employment, (b) at a place where the employee may reasonably be and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it. *Woodley* v. *Rossi,* . . . [152 Conn. 1, 4, 202 A.2d 136]; *Farn-*

---

[2] "[General Statutes] Sec. 31-275. DEFINITIONS. . . . 'Arising out of and in the course of his employment' means an accidental injury happening to an employee . . . originating while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises, or while so engaged elsewhere upon the employer's business or affairs by the direction, express or implied, of the employer. . . .

"A personal injury shall not be deemed to arise out of the employment unless causally traceable to the employment . . . ."

*ham* v. *Labutis,* 147 Conn. 267, 269, 160 A.2d 120."
*Dombach* v. *Olkon Corporation,* supra. The second
criterion—that the injury arose out of the employ-
ment—may be satisfied by a showing that a causal
connection exists between the injury and the em-
ployment. *Mulligan* v. *Oakes,* 128 Conn. 488, 490–91,
23 A.2d 870; *Larke* v. *John Hancock Mutual Life Ins.
Co.,* 90 Conn. 303, 309, 97 A. 320.

The finding as corrected discloses that in this case
the third requirement of the "in the course of his
employment" criterion was not met. Menzies was
not at the time of his injury performing any duties
but had deviated temporarily from the course of his
employment. Case law has rather precisely deline-
ated what kinds of interruptions constitute devia-
tions. If a momentary interruption serves the pur-
pose of benefiting the employer, regardless of whom
else it might benefit, an injury resulting therefrom
may be compensable. *Farnham* v. *Labutis,* 147 Conn.
267, 270, 160 A.2d 120; *Kuharski* v. *Bristol Brass
Corporation,* 132 Conn. 563, 566, 46 A.2d 11; *Davis*
v. *Goldie Motors, Inc.,* 129 Conn. 240, 243, 27 A.2d
164. Similarly, injuries occurring during diversions
from the usual course of employment which diver-
sions nevertheless enable the employee more effi-
ciently or more comfortably to continue performing
his duties are compensable. *Vitas* v. *Grace Hospital
Society,* 107 Conn. 512, 516, 141 A. 649; *Ryerson* v.
*A. E. Bounty Co.,* 107 Conn. 370, 375, 140 A. 728;
see 1 Larson, Law of Workmen's Compensation,
p. 4-269, § 19.63. Where, however, the interruption
and deviation confer no benefit on the employer,
either directly, or indirectly by fostering the well-
being of the employee, an injury arising therein is
not compensable. *Farnham* v. *Labutis,* supra; *Davis*

v. *Goldie Motors, Inc.,* supra; *Vitas* v. *Grace Hospital Society,* supra. It has been suggested that where an injury occurs during an interruption which has been taken solely to benefit a third party, the injury is even more clearly noncompensable. 58 Am. Jur. 740, Workmen's Compensation Law, § 235. Also, the fact that injury results from risks inherent in the interruption rather than in the usual course of employment militates against compensation. *Mason* v. *Alexandre,* 96 Conn. 343, 345, 113 A. 925; see *Katz* v. *Katz,* 137 Conn. 134, 139, 75 A.2d 57; 1 Larson, op. cit., p. 4-263, § 19.61.

The suggestion that the defendant employer would have acquiesced in the performance of Menzies' errand is of no help to the plaintiff. The mere fact that an employer has granted a personal privilege, the performance of which is not incidental to the employment, does not have the effect of rendering compensable otherwise noncompensable injuries arising in its performance. *Mulligan* v. *Oakes,* supra; see *Farnham* v. *Labutis,* supra.

Because Menzies' injury arose during and out of a deviation from the course of his employment in an undertaking which was not within the scope of his employment, conferred no benefit on his employer and entailed risks different from the usual hazards of his employment in driving to and from work, the court erred in sustaining the conclusion of the commissioner that the injury "arose out of and in the course of his employment with the respondent employer."

In my opinion there was no error in the court's decision that the commissioner properly held that the defendants were not precluded from asserting their defense that the injuries sustained by Menzies

did not arise in the course of and out of his employment by the respondent Fisher. On the other hand, I would find error in the decision of the court which sustained the conclusion of the commissioner that the injuries arose out of and in the course of Menzies' employment by Fisher and were therefore compensable under the provisions of the Workmen's Compensation Act.

In this opinion MacDonald, J., concurred.